**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TOLIFE TECHNOLOGIES PTY LTD and MOSHE MAOR,<br><br>Plaintiffs,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | ) | Case No. |

## COMPLAINT

Plaintiffs TOLIFE TECHNOLOGIES PTY LTD and MOSHE MAOR hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants").

## INTRODUCTION

1. This is a civil action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiffs' patented design for a lice comb, U.S. Patent No. D858,877 S (the "V-COMB Patent").

2. The V-COMB Patent registration is valid, subsisting, and in full force and effect. Plaintiff Moshe Maor is the owner and lawful assignee of all right title, and interest in and to the

V-COMB Patent, which was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the V-COMB Patent is attached hereto as **Exhibit 1**.

3. Each of the Defendants directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products infringing Plaintiffs' V-COMB Patent (the "Infringing Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the infringing products. Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in **Schedule A** attached hereto (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon.com ("Amazon") and eBay.com ("eBay"). The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more seller aliases to conceal both their identities and the full scope and interworking of their operation.

4. Plaintiffs are forced to file this action to combat Defendants' infringement of its patented design, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

5. As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design and seeks injunctive and monetary relief.

## SUBJECT MATTER JURISDICTION

6. This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

7. Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, each Defendant regularly conducts, transacts and/or solicits business in New York and in this Judicial District, and/or derives substantial revenue from business transactions in New York and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

8. In addition, each Defendant has offered to sell and ship and/or sold and shipped Infringing Products into this Judicial District. Defendants' infringing actions caused injury to Plaintiffs in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

9. For example, Defendant Internet Stores accept orders of Infringing Products from and offer shipping to New York addresses located in this Judicial District. Screenshots of the shopping cart from Defendant Internet Stores allowing Infringing Products to be shipped to Manhattan are attached to the declaration of Plaintiffs' Representative ("Rep. Decl."), filed contemporaneously herewith, as **Exhibit 2**.

10. Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in New

York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as Amazon and eBay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including New York (and specifically, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and specifically, in this Judicial District).

11. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, and have registered agents in this Judicial District. Specifically, Defendants are reaching out to do business with New York residents by operating one or more commercial, interactive Internet Stores through which New York residents can purchase products infringing on the V-COMB Patent. Each of the Defendants has targeted sales from New York residents by operating online stores that offer shipping to the United States, including New York and this Judicial District. Each Defendant is committing tortious acts in New York, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of New York.

## THE PARTIES

13. Plaintiff TOLIFE TECHNOLOGIES PTY LTD ("ToLife") is a corporation organized and existing under the laws of Australia with its principal place of business in Welshpool, West Australia. ToLife specializes and has specialized in the development and marketing of chemical free head lice treatments. Among other things, ToLife develops, manufactures, and markets allergen- and chemical-free products incorporating the V-COMB Patent that eliminate head lice and eggs immediately and prevent future infestations with the ease of combing the hair with an electrical device that combines combing and vacuuming and is gentle and pain-free (the "V-COMB Products"). ToLife is the official source of the V-COMB Products, which include the following:

**V-Comb A1**




**V-Comb Supra**




14. Plaintiff MOSHE MAOR is the Managing Director for ToLife. Mr. Maor is the owner and lawful assignee of all right title, and interest in and to the V-COMB Patent.

| U.S. Patent Number | Claim | Issue Date |
| --- | --- | --- |
| D858,877 S |  | September 3, 2019 |

15. Since ToLife launched its V-COMB Products in November 2014, the company has followed a defined strategy for positioning its brand, marketing and promoting the product line in the industry and to consumers, and establishing distribution channels. ToLife's promotional efforts of its V-COMB Products include, by way of example but not limitation, substantial print media, the licetec.com.au and social media websites, point-of-sale materials, and exhibition booths at international trade shows such as the National Association of Chain Drug Stores' Total Store Expo in Denver, Colorado and the Florida International Medical Expo in Orlando. ToLife has expended substantial time, money, and other resources in advertising and otherwise promoting its V-COMB Products.

16. The superiority of the V-COMB Products' innovative design has been recognized by Good Design Australia, an international design promotion organization that selected one of ToLife's V-COMB products as the winner of its 2020 Good Design Award for Medical & Scientific Product Design as well as a recipient of its 2015 Good Design Selection award, Australia's oldest and most prestigious award for design and innovation. Further, Australia by

Design: Innovation, a television program which showcases Australia's best and most exciting product innovations, selected ToLife's V-COMB Products as a finalist in 2018. ToLife has ensured that its V-COMB Products meet the most stringent regulatory requirements and has received approvals from regulatory bodies, including the United States Food and Drug Administration, the Australian Therapeutic Goods Administration, CE Certification (meeting the safety, health, and environmental protection requirements of the European Economic Area), the Saudi Food & Drug Authority, and the United Arab Emirates Ministry of Health, as well as International Organization for Standardization ("ISO") certifications for quality management systems (ISO 9001) and quality management systems for regulated medical devices (ISO 13485).

17. ToLife's V-COMB Products are distributed and sold to consumers throughout the world, including in the United States and New York through authorized retailers, various affiliates, and the http://licetec.com.au website.

18. The V-COMB Products have become enormously popular, driven by ToLife's arduous quality standards and innovative design. ToLife's V-COMB Products are known for their distinctive designs. These designs are broadly recognized by consumers as being sourced from ToLife. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from the V-COMB Products. ToLife uses these designs in connection with the V-COMB Products, including, but not limited to, the V-COMB Patent.

19. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including

New York, and has offered to sell and, on information and belief, has sold and continues to sell infringing V-COMB Products to consumers within the United States, including New York and in this Judicial District.

## DEFENDANTS' UNLAWFUL CONDUCT

20. The success of the V-COMB Products has resulted in significant infringing actions by bad actors.

21. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings on platforms such as eBay and Amazon, which were offering for sale, selling, and importing Infringing Products to consumers in this Judicial District and throughout the United States.

22. Bad actors have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.

23. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

24. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine V-COMB Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western

Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

25. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

26. Plaintiffs have not licensed or authorized Defendants to use the V-COMB Patent and none of the Defendants is an authorized retailer of genuine V-COMB Products.

27. On personal knowledge and belief, Defendants have targeted sales to New York residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including New York, accept payment in U.S. dollars and have sold Infringing Products to residents of New York.

28. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for infringers to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done.

29. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive e-commerce operations, and to avoid being shut down.

30. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

31. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

32. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

33. Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

34. Further, infringers such as Defendants typically operate multiple credit card merchant accounts as well as e-commerce accounts, such as PayPal, behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

---

[1] *See* https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are "very adept at setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited Apr. 1, 2022).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. *See* https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited Apr. 1, 2022).

35. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their e-commerce, PayPal, and other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

36. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the V-COMB Patent in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and New York over the Internet.

37. Each Defendant Internet Store offers shipping to the United States, including New York (in this Judicial District) and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

38. Prior to and contemporaneous with their infringing actions alleged herein, Defendants had knowledge of (i) Plaintiffs' ownership of the V-COMB Patent, (ii) the fame and incalculable goodwill associated therewith, and (iii) the popularity and success of the V-COMB Products. Defendants in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Infringing Products.

39. Defendants have been engaging in the infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the V-COMB Products.

**<u>FIRST CAUSE OF ACTION</u>**
**DESIGN PATENT INFRINGEMENT**
**(35 U.S.C. § 271)**
**[Against Defendants Designated in Schedule A]**

40. Plaintiffs hereby re-allege and incorporate by reference herein the allegations set forth in the preceding paragraphs.

41. Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the V-COMB Patent.

42. For example, below is a comparison of figures from Plaintiffs' V-COMB Patent and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

**Figures from the V-COMB Patent**



Fig. 1




Fig. 2

**Exemplary Infringing Product Sold on Defendant Internet Store**






43. Defendants' activities constitute willful patent infringement and counterfeiting under 35 U.S.C. § 271.

44. Defendants have infringed the Plaintiffs' V-COMB Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

45. Plaintiff are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284 289, including Defendants' profits.

//

//

//

//

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, copy or colorable imitation of the design claimed in the V-COMB Patent;

   b. further infringing the V-COMB patented design and damaging Plaintiffs' goodwill;

   c. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the V-COMB Patent;

   d. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe on the V-COMB Patent;

   e. using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to

sell or is the means by which Defendants could continue to sell Infringing Products; and

f. operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing on the V-COMB Patent; and

g. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (f).

2. Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including, without limitation, any online marketplace platform such as Amazon and eBay, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the V-COMB Patent.

3. That Plaintiffs be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the V-COMB Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

4. That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of Plaintiffs' V-COMB Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

5. In the alternative, that Plaintiff sbe awarded all profits realized by Defendants from Defendants' infringement of Plaintiffs' V-COMB Patent, pursuant to 35 U.S.C. § 289;

6. That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

7. Any and all other relief that this Court deems just and proper.

Dated: April 4, 2022

Respectfully submitted,

COLE SCHOTZ P.C.

By: *\/s/ Michael R. Yellin*

Michael R. Yellin
1325 Avenue of the Americas
19th Floor
New York, New York 10017
(201) 525-6258
myellin@coleschotz.com

-and-

THOIS LAW
Christopher Tom, Esq.
400 Main Street, Suite 250
Los Altos, CA 94022
(650) 327 4200
ctom@thoits.com

*Attorneys for Plaintiffs*
*ToLife Technologies Pty Ltd and*
*Moshe Maor*